1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10
MERCEDES C.,[1]
11                                              Case No. 8:18-cv-00112-GJS
            Plaintiff
12
         v.
13                                              **MEMORANDUM OPINION AND**
                                                **ORDER**
14  NANCY A. BERRYHILL, Acting
    Commissioner of Social Security,
15
            Defendant.
16

17                  **I.    PROCEDURAL HISTORY**

18        Plaintiff Mercedes C. ("Plaintiff") filed a complaint seeking review of the

19  decision of the Commissioner of Social Security denying her application for

20  Disability Insurance Benefits ("DIB").  The parties filed consents to proceed before

21  the undersigned United States Magistrate Judge [Dkts. 11 and 12] and briefs [Dkt.

22  16 ("Pl. Br."), Dkt. 19 ("Def. Br.")] addressing disputed issues in the case.  The

23  matter is now ready for decision.  For the reasons discussed below, the Court finds

24  that this matter should be remanded.

25        _____

26

27  [1]      In the interest of privacy, this Order uses only the first name and the initial of
    the last name of the non-governmental party in this case.
28

# II. ADMINISTRATIVE DECISION UNDER REVIEW

Plaintiff filed an application for DIB in September 2014, alleging disability commencing on July 10, 2012.[2] [Dkt. 15, Administrative Record ("AR") 16, 295-96.] Plaintiff's application was denied at the initial level of review and on reconsideration. [AR 16, 137-40, 146-50.] A video hearing was held before Administrative Law Judge Ben Willner ("the ALJ") on March 14, 2017. [AR 16, 38-59.]

On March 27, 2017, the ALJ issued an unfavorable decision applying the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a)(4).[3] [AR 16-32.] The ALJ determined that Plaintiff met the insured status requirements for DIB through December 31, 2016. [AR 18.] At step one, the ALJ found Plaintiff engaged in substantial gainful activity ("SGA") from June 2013 through April 2014, but the ALJ also found there was a continuous 12-month period(s) during which Plaintiff did not engage in SGA. [AR 19.] The ALJ's subsequent findings address the period during which Plaintiff did not engage in SGA through her date last insured. [AR 19.] At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: bipolar disorder, borderline personality disorder, anxiety, obsessive compulsive disorder, and asthma. [AR 19.] The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix I of the Regulations, ("the Listings"). [AR 20]; *see* 20 C.F.R. Pt.

---

[2] This is Plaintiff's second application for DIB. [AR 16.] The prior application was denied initially, on reconsideration, and after a hearing before an ALJ in a decision dated July 9, 2012. [AR 16, 89-98.] The Appeals Council later denied review. [AR 103-07.]

[3] The ALJ did not adopt the decision of the prior ALJ denying benefits, as new and material evidence and updated regulations were considered in this case. [AR 16-17, 26-27.]

404, Subpt. P, App. 1.  Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels, with the following nonexertional limitations:

> She can have no more than frequent exposure to pulmonary irritants such as dusts, odors, and fumes.  [She] can perform tasks of a nature that can be learned within a short demonstration period of up to 30 days with no more than frequent changes to the daily tasks and duties.  She can work primarily with things, rather than with people, such that the contact with others is only on an occasional basis.  She can maintain concentration, persistence and pace at that limited range of tasks for two hours at a time before taking regularly scheduled breaks and returning to work.

[AR 22.]  At step four, the ALJ determined that Plaintiff was not able to perform her past relevant work as a mortgage clerk or escrow officer.  [AR 29-30.]  At step five, the ALJ concluded that Plaintiff is able to perform other work that exists in significant numbers in the economy, including the representative occupations of hand packager, sub-assembler, and bakery worker.  [AR 30-31.]

The Appeals Council denied review of the ALJ's decision on December 27, 2017.  [AR 1-7.]  This action followed.

Plaintiff claims the ALJ failed to articulate specific and legitimate reasons supported by substantial evidence for rejecting the opinions of her physicians.  [Pl. Br. at 12-17.]  Plaintiff requests reversal and remand for payment of benefits.  [Pl. Br. at 17.]  The Commissioner asserts that the ALJ's decision should be affirmed. [Def. Br. at 20.]

## III.    GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if:  (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards.  *See Carmickle v.*

3

*Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (internal citation omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## IV.   DISCUSSION

Plaintiff contends the ALJ erred by failing to properly consider the opinions of her doctors, including the opinion of her treating psychiatrist, Dr. Joseph Anlacan. [Pl. Br. at 12-17.]

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527. In general, a treating physician's opinion is entitled to more weight than an examining

physician's opinion and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[4] *See Lester*, 81 F.3d at 830. "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).

An ALJ must provide clear and convincing reasons supported by substantial evidence to reject the uncontradicted opinion of a treating or examining physician. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830-31). Where such an opinion is contradicted, however, an ALJ may reject it only by stating specific and legitimate reasons supported by substantial evidence. *Bayliss*, 427 F.3d at 1216; *Trevizo*, 871 F.3d at 675. The ALJ can satisfy this standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (when a treating physician's opinion is not given controlling weight, factors such as the nature, extent, and length of the treatment relationship, the frequency of examinations, the specialization of the physician, and whether the physician's

---

[4] For claims filed on or after March 27, 2017, the opinions of treating physicians are not given deference over non-treating physicians. *See* 20 C.F.R. § 404.1520c (providing that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources"); 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016). Because Plaintiff's claim was filed before March 27, 2017, the medical evidence is evaluated pursuant to the treating physician rule discussed above. *See* 20 C.F.R. § 404.1527; [Def. Br. at 4 n.5 (citing Social Security Ruling ("SSR") 96-2p).]

opinion is supported by and consistent with the record should be considered in determining the weight to give the opinion).

Dr. Anlacan began treating Plaintiff in the Philippines in December 2009. [AR 476, 494.] Dr. Anlacan reported that Plaintiff had a history of recurrent depressed mood, several suicide attempts, numerous failed attempts at sustaining work, and obsessive-compulsive symptoms. [AR 476, 494.] In June 2013, Plaintiff moved back to the United States, after which Dr. Anlacan provided supportive psychotherapy and medication advice to Plaintiff over the telephone. [AR 477, 492, 602.] In October 2014, Dr. Anlacan completed a mental residual functional capacity ("MRFC") assessment for Plaintiff. [AR 472-75.] He diagnosed Plaintiff with bipolar II disorder and borderline personality disorder and assessed a Global Assessment of Functioning ("GAF") score of 41 to 50.[5] [AR 476, 494.] Dr. Anlacan opined that Plaintiff had "marked" limitations in the following areas: maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number of and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; and tolerating normal levels of stress. [AR 473-75.] Dr. Anlacan found that Plaintiff had "moderate" limitations in the following areas: understanding and remembering detailed instructions; carrying out detailed instructions; working in coordination with or proximity to others without being distracted by them; getting along with

---

[5]     A GAF score in the range of 41 to 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning (e.g., unable to keep a job). *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV"), at 32 (4th ed. 2000).

coworkers or peers without distracting them or exhibiting behavioral extremes; responding appropriately to changes in the work setting; and setting realistic goals or making plans independently of others. [AR 473-75.] Dr. Anlacan concluded that Plaintiff was not able to work on a regular and sustained basis. [AR 475.] Specifically, he found that Plaintiff's mental impairments substantially interfered with her ability to work on a regular and sustained basis at least 20 percent of the time, Plaintiff would need to miss work seven days per month because of her mental impairment or for treatment of her mental impairment, Plaintiff's mood was unstable and unpredictable despite improvement from medications, and Plaintiff's medications may have cognitive side effects. [AR 475.]

The ALJ gave "some limited weight" to Dr. Anlacan's opinion, but stated that many of the moderate to marked work restrictions assessed "exceed the evidence of record, including multiple other opinions . . . that have been given more weight," "[t]reatment notes establish that [Plaintiff] generally exhibits a normal mental status, is able to care for her basic needs, maintain a daily routine and travel," and Plaintiff "was able to work at SGA levels during this period." [AR 28.] The ALJ also noted that "Dr. Anlacan had an unusual treating relationship [with Plaintiff] that was eventually limited to telephone contact alone." [*Id.*]

In assessing Plaintiff's work limitations, the ALJ gave "great weight" to the opinions of Dr. Funkenstein and Dr. Cummings, the non-examining State agency medical consultants, who reviewed Plaintiff's record and concluded that Plaintiff had no more than moderate limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaptation. [AR 26, 112-16, 119, 129-32.] The ALJ also gave "some weight" to the opinion of Dr. Desilva Reynolds, who examined Plaintiff in February 2014 and found, in part, that Plaintiff "seemed motivated to maintain her illness to avoid employment, but was capable, and could manage her anxiety enough to go to work." [AR 27, 437.]

Plaintiff contends the ALJ failed to provide specific and legitimate reasons for

rejecting Dr. Anlacan's opinion. [Pl. Br. at 15-17.] Defendant responds that the ALJ properly accorded less weight to Dr. Anlacan's opinion, as his findings were not consistent with the evidence of record and the opinions of Dr. Funkenstein and Dr. Cummings provided substantial evidence for the ALJ's decision. [Def. Br. at 5-6; AR 26-27, 112-16, 119, 129-32, 437.] The Court finds that the ALJ rejected Dr. Anlacan's opinion without providing legally sufficient reasons doing so.

The ALJ's broad and conclusory statement that Dr. Anlacan's "findings exceed the evidence of record, including multiple other opinions" that were given "more weight" was not a specific and legitimate reason for discounting Dr. Anlacan's opinion. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required . . . The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."); *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989) (same). While the ALJ summarized Dr. Anlacan's assessment of Plaintiff's functional limitations, the ALJ failed to specifically explain how such findings exceeded the medical evidence of record. [AR 28.] And, although the ALJ purported to rely on "multiple other opinions" that contradicted Dr. Anlacan's opinion, such conflict in the medical opinion evidence simply triggered, rather than satisfied the ALJ's obligation to state specific, legitimate reasons supported by substantial evidence in the record for rejecting Dr. Anlacan's treating opinion. *See Bayliss*, 427 F.3d at 1216; *Trevizo*, 871 F.3d at 675; *Wood v. Colvin*, No. ED CV 16-534-E, 2016 WL 5496267, at *2 (C.D. Cal. Sept. 28, 2016).

The ALJ also asserted that Dr. Anlacan's opinion is inconsistent with Plaintiff's treatment notes, which establish that Plaintiff "generally exhibits a normal mental status." [AR 28.] In support of this finding, the ALJ cited several

treatment records from 2016 and 2017 indicating Plaintiff had mental status examinations "within normal limits." [AR 28, 542, 564, 579, 588, 614, 632, 666.] However, "[i]t is the nature of bipolar disorder that symptoms wax and wane over time." *Attmore v. Colvin*, 827 F.3d 872, 878 (9th Cir. 2016); *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated."). Further, a review of the cited records shows that despite some normal mental status examinations, Plaintiff frequently manifested symptoms of bipolar disorder, including suicidal thoughts, depression, mood swings, sleep difficulties, and anxiety. [AR 542, 564-65, 579, 586, 654.] The records also show that Plaintiff was sent to jail for assaulting her roommate, hospitalized and placed on a suicide watch in October 2015, and admitted to a residential mental health treatment facility for bipolar disorder in December 2016. [AR 564, 614, 625.] It was improper for the ALJ to rely on isolated signs of improvement to discredit Dr. Anlacan's opinion when the treatment notes as a whole showed persistent symptoms of bipolar disorder. *See Garrison*, 759 F.3d at 1017 (reasoning that the ALJ cannot rely on isolated evidence of improvement when the record as a whole shows continuing cycles of debilitating and less severe symptoms); *Attmore*, 827 F.3d at 875 ("We cannot affirm . . . by isolating a specific quantum of supporting evidence, but must consider the record as a whole.").

The ALJ also indicated that Plaintiff's activities were inconsistent with Dr. Anlacan's assessment of Plaintiff's work-related limitations. [AR 28.] However, considering the record as a whole, Plaintiff's activities do not provide a sufficient basis for rejecting Dr. Anlacan's opinion. For example, the ALJ found that Plaintiff was able to care for her basic needs and maintain a daily routine, but Plaintiff's treatment records reflect Plaintiff's resistance to showering on a daily basis [AR 542, 544, 546, 553], difficulty performing simple life skills such as eating, cooking

and household chores [AR 550-51, 553, 666], lack of structure in her daily routine [AR 544], and chronic sleep problems [AR 436, 483, 544, 545, 548, 555, 592, 598, 611, 662]. The ALJ also noted that Plaintiff was able to relocate from the Philippines in 2013 and later travel between California and Nevada. [AR 24-26, 28.] However, the ability to travel is not necessarily inconsistent with disability. *See*, *e.g.*, *Tackett v. Apfel*, 180 F.3d 1094, 1103 (9th Cir. 1999) (evidence that the plaintiff took a four-day road trip to California, without more, is insufficient to counter the opinions of the treating physicians and the medical examiner that the plaintiff needs to shift positions every 30 minutes); *see also Howard v. Heckler*, 782 F.2d 1484, 1488 (9th Cir. 1986) (ability to engage in periodic travel around the country in a motor home did not justify discrediting complaints of debilitating pain). As the ALJ failed to offer any explanation as to how Plaintiff's history of travel conflicts with Dr. Anlacan's assessment of Plaintiff's work-related limitations, it is not a specific and legitimate reason for rejecting his opinion. [AR 28, 472-75.] The ALJ further found that Plaintiff performed SGA from June 2013 through April 2014. [AR 19, 28.] However, Dr. Anlacan issued his assessment in October 2014, six months after Plaintiff's SGA period had ended. [AR 19, 472-75.] Thus, Plaintiff's period of SGA is not inconsistent with Dr. Anlacan's opinion. And, while Plaintiff attempted to return to work in June 2014, Plaintiff was fired about two months later due to poor performance attributed to her conditions. [AR 19, 43-44, 317-18, 338]; *see Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1996) ("Occasional symptom-free periods -- and even the sporadic ability to work -- are not inconsistent with disability.").

Additionally, the ALJ noted that Dr. Anlacan's "unusual treating relationship" with Plaintiff was limited to telephone consultations after Plaintiff returned to the United States in June 2013. [AR 23, 28, 477, 492.] However, the ALJ failed to discuss the quality or nature of the telephone consultations and did not offer any explanation as to why the telephone consultations warranted according less weight

to this treating physician's opinion. Thus, Dr. Anlacan's treatment relationship with Plaintiff is not a specific and legitimate reason supported by substantial evidence for rejecting his opinion.

Finally, although the ALJ gave "great weight" to the opinions of Dr. Funkenstein and Dr. Cummings, the opinions of these non-examining doctors do not, without more, constitute substantial evidence justifying the rejection of Dr. Anlacan's opinion as a treating physician. *See Lester*, 81 F.3d at 831; *Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993) ("[t]he non-examining physicians' conclusion, with nothing more, does not constitute substantial evidence") (internal quotation marks and citation omitted).

## V. CONCLUSION

The Court has discretion to remand or reverse and award benefits. *See Trevizo*, 871 F.3d at 682. Where no useful purpose would be served by further proceedings and the record has been fully developed, it may be appropriate to exercise this discretion to direct an immediate award of benefits. *See id*. at 682-83. But where there are outstanding issues that must be resolved before a determination of disability can be made or it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Garrison*, 759 F.3d at 1021 (if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," a court must remand for further proceedings).

In this case, there are outstanding issues that must be resolved before a final determination can be made, given the ALJ's failure to properly evaluate Dr. Anlacan's opinion. *See Dominguez v. Colvin*, 808 F.3d 403, 409 (9th Cir. 2015) ("it is up to the ALJ, not the court, to determine how [a claimant's] impairments affect the formulation of [her] RFC"). Because the record is not fully developed and Plaintiff's entitlement to benefits remains unclear, remand for further administrative

proceedings would be useful.  *See Garrison*, 759 F.3d at 1020; *Brown-Hunter*, 806 F.3d at 495 ("The touchstone for an award of benefits is the existence of a disability, not the agency's legal error.").  On remand, the ALJ should conduct a review of the entire record in a manner that is consistent with the Court's findings.[6]

**IT IS ORDERED.**


DATED:  February 13, 2019

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

_____

[6]    As this matter is being remanded for further consideration of Dr. Anlacan's opinion, the Court declines to reach the remaining issue concerning the ALJ's consideration of Dr. Stepanoff's opinion.  [Pl. Br. at 16-17.]  However, the ALJ should consider Plaintiff's additional contention of error when evaluating the evidence on remand.